1  KAREN P. HEWITT
   United States Attorney
2  MICHELLE M. PETTIT
   Assistant U.S. Attorney
3  California State Bar No. 253406
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone No.: (619) 557-7450
   Facsimile No.:  (619) 235-2757
6  Email: michelle.pettit@usdoj.gov

7  Attorneys for Plaintiff
   United States of America

8

                    UNITED STATES DISTRICT COURT

9

                  SOUTHERN DISTRICT OF CALIFORNIA

10

                                    )  Criminal Case No.  07CR3106-BEN
11                                  )
                                    )  District Judge:    Hon. Roger T. Benitez
12                                  )  Date:              March 3, 2008
   UNITED STATES OF AMERICA,        )  Time:              2:00 p.m.
13                                  )
            Plaintiff,              )  **GOVERNMENT'S RESPONSE AND**
14                                  )  **OPPOSITION TO DEFENDANT'S**
       v.                           )  **MOTIONS TO:**
15                                  )  **(1) SUPPRESS EVIDENCE;**
   MARIA VASQUEZ,                   )  **(2) SUPPRESS STATEMENTS; AND**
16                                  )  **(3) DISMISS THE INDICTMENT**
            Defendant.             )      **DUE TO MISINSTRUCTION**
17  _____ )      **OF THE GRAND JURY**

18

19        Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt,

20  United States Attorney, and Michelle M. Pettit, Assistant U.S. Attorney, hereby files its Response

21  and Opposition to Defendant's Motion to Suppress Evidence, Suppress Statements, and Motion to

22  Dismiss the Indictment, filed by Defendant Maria Vasquez ("Defendant").  This Response and

23  Opposition is based upon the files and records of this case.

24                                   **I**

25                          **STATEMENT OF FACTS**

26    A.    **Statement of the Case**

27        On November 14, 2007, a federal grand jury in the Southern District of California returned

28  a two-count Indictment charging Defendant with the transportation of illegal aliens and aiding and

abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).  On November 15, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

**B.**     **Statement of Facts**

**1.**     **Defendant's Arrest**

On October 29, 2007, Border Patrol Agent Luis Rivera and FBI Special Agent Murry Streetman were conducting surveillance in the vicinity of the 4200 block of Logan Avenue in San Diego, California.  At approximately 10:50 a.m., they observed a gray Ford Expedition depart the area and travel to the Auto Zone parking lot located near Logan Avenue.  In the past, Border Patrol Agents have apprehended undocumented aliens in this location where the aliens have been transferred from one vehicle to another.  Based on their training and experience, Agents Rivera and Streetman knew this particular parking lot was notorious for presence of alien smuggling activities. While the agents continued surveillance of the Expedition, a gold Chevrolet Avalanche arrived in the parking lot and parked next to the Expedition.  The driver of the Avalanche got into the rear seat of the Expedition, and within minutes he walked back the Avalanche.  Then two Hispanic females, later identified as Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, and an unidentified Hispanic male exited the Avalanche and loaded into the rear seat of the Expedition.  The agents then observed the Expedition depart the area and return to the end of the cul-de-sac at the 4200 block of Logan Avenue.  The male passenger of the Expedition then guided Blanca Hernandez-Cansino and Rocio Hernandez-Cansino to a blue Astro Minivan bearing California license plate 3UGU958.

The Astro minivan then departed the area with Blanca Hernandez-Cansino and Rocio Hernandez-Cansino inside and headed northbound on Interstate 5.   Agent Rivera requested assistance from the Border Patrol agents at the San Clemente checkpoint  in making a vehicle stop of the minivan.  At approximately 12:15 p.m., Border Patrol Agents Arguilez and Avila observed the blue Astro minivan, license plate 3UGU958, pass their location, and they performed a vehicle stop.  Agents Arguilez and Avila approached the vehicles and questioned the occupants as to their immigration status. The driver identified herself as Maria Vasquez, a United States citizen. The two Hispanic female passengers, Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, admitted

1     to being Mexican citizens and with no immigration documents allowing them to enter or remain in

2     the United States.

3          **2.          Defendant's Post-<u>Miranda</u> Statement**

4          Defendant was advised of her <u>Miranda</u> rights, and she stated that she understood her rights

5     and wished to answer questions without an attorney present. This <u>Miranda</u> waiver was recorded on

6     digital video. She stated that a man named Ramon offered her money to transport his two daughters

7     from the San Diego area to his home in the Los Angeles area. Defendant believed that she was to

8     be paid by Ramon for the transportation.

9          Defendant advised that she was to go to the Jack-in-the-Box restaurant near the intersection

10    of Interstate 805 and 43rd Street in San Diego, California on the morning of October 29, 2007.

11    Shortly after 10:30 a.m. on October 29, 2007, a gray Ford Expedition met her at the Jack-in-the-

12    Box, and she was instructed to follow the vehicle. She stated that the Expedition led her to a cul-de-

13    sac where two females exited the Expedition and entered her vehicle. Then defendant departed

14    north on Interstate 5 and was subsequently stopped by Border Patrol near the San Clemente

15    checkpoint. Defendant admitted that she knew the females were illegally in the United States.

16                                    **II**

17                              **ARGUMENT**

18    A.     **MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED**

19          1.     **The Stop Of Defendant's Vehicle Was Based Upon Reasonable
                   Suspicion**.

20
      Defendant argues that the vehicle stop was an illegal stop. The Government recognizes that

21    the Fourth Amendment applies to all seizures, even brief detentions that fall short of a traditional

22    arrest. <u>See</u> <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975). For an investigatory stop,

23    however, the requisite burden is less demanding than probable cause and allows an officer to search

24    a vehicle based on the lower standard of reasonable suspicion. <u>See</u> <u>United States v. Sokolow</u>, 490

25    U.S. 1, 7-8 (1989). As a result, officers may stop a vehicle for investigatory purposes if they can

26    articulate facts that form a basis for a particularized suspicion of criminal activity. <u>See</u> <u>United States</u>

27    <u>v. Cortez</u>, 449 U.S. 411, 417-18 (1981).

28

1    The requirement of a reasonable, or particularized, suspicion encompasses two elements.

2    First, the suspicion must be based on the totality of the circumstances; and second, it must arouse

3    a suspicion that the particular person to be stopped has committed, or is about to commit, a crime.

4    United States v. Arvizu, 534 U.S. 266, (2002); United States v. Montero-Camargo, 208 F.3d 1122,

5    1129 (9th Cir. 2000).  Although a reasonable suspicion can be aroused through a myriad of

6    observations, insights, and actions, several generally accepted and widely recognized factors have

7    been enumerated.

8    Supreme Court precedent stresses the importance of recognizing that objective facts, when

9    viewed by trained law enforcement officers - even if meaningless to the untrained observer or

10   consistent with innocent travel - can be combined with permissible deductions from such facts to

11   form a founded suspicion to stop a vehicle.  Arvizu, 534 U.S. at 277 (holding that the Border Patrol

12   agent was entitled to assess the situation in light of his specialized training and familiarity with the

13   area); Cortez, 449 U.S. 419.  In Brignoni-Ponce, the Supreme Court set forth a non-exclusive list

14   of factors upon which Border Patrol agents may rely in finding reasonable suspicion such as the

15   characteristics of the area in which they encounter a vehicle, the vehicle's proximity to the border,

16   usual patterns of traffic on the particular road, and an agent's previous experience with alien traffic.

17   422 U.S. at 884-85; see also, United States v. Olafson, 213 F.3d 435, 439 (9th Cir. 2000).

18   In this case, the agents were conducting surveillance in an area that is notorious for alien

19   smuggling activities.  The agents observed the suspicious activity of the Avalanche parking beside

20   the Expedition and Avalanche's driver getting into the rear seat of the Expedition.  Their reasonable

21   suspicion was confirmed when the three Hispanic passengers exited the Avalanche and climbed into

22   the rear seat of the Expedition. The agents then observed the Expedition take the passengers back

23   to the cul-de-sac on Logan Avenue where the two Hispanic females, later identified as Blanca

24   Hernandez-Cansino and Rocio Hernandez-Cansino, were transferred to the blue Astro minivan that

25   Defendant was driving.  That Astro minivan then departed the area and headed northbound on

26   Interstate 5, further confirming that a crime of alien smuggling was being committed.  Given these

27   circumstances, there is no question that agents had reasonable suspicion to stop this vehicle.

28

1

2. **Defendant's Motion Should Be Denied Without An Evidentiary Hearing**

2      This Court can and should deny Defendant's motion to suppress statements without an

3  evidentiary hearing. First, under Ninth Circuit precedent as well as Southern District Local Criminal

4  Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only

5  when the defendant adduces specific facts sufficient to require the granting of the defendant's

6  motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his

7  motion to suppress, failed to dispute any material fact in the government's proffer.  In these

8  circumstances, the district court was not required to hold an evidentiary hearing.").

9      Second, an evidentiary hearing is not required if a defendant's motion to suppress and

10  supporting declarations or affidavits fail to allege a specific factual dispute. See United States v.

11  Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving

12  papers are definite, specific, detailed and nonconjectural to enable the court to conclude that

13  contested issues of [material] fact . . . are at issue"); see United States v. Howell, 231 F.3d 616, 620-

14  23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only

15  when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable

16  the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d

17  1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where

18  "defendant, in his motion to suppress, failed to dispute any material fact in the government's

19  proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (motion to

20  suppress "akin to boilerplate motions that lay no factual foundation" and unsworn representations

21  of counsel were "too indefinite and conjectural to require the government to respond").

22      In this case, Defendant fails to identify any fact in dispute.  In fact, the Government agrees

23  with the contentions provided in the Defendant's Declaration.  Therefore, Defendant fails to

24  specifically identify facts that would give rise to the need for an evidentiary hearing.

25  **B.    MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED**

26      Defendant moves to suppress statements and requests that the United States prove that all

27  statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.

28  Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine

1   whether Defendant's statements were voluntary.  Defendant's motion to suppress statements should

2   be denied without an evidentiary hearing because she failed to allege a specific factual dispute.  As

3   explained further below, the Government does not believe that a suppression hearing is necessary

4   to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's

5   Motion, the United States will prove that Defendant's statements were voluntary, Defendant was

6   not subject to custodial interrogation, and the statements are, therefore, admissible.

### 1.    Knowing, Intelligent, and Voluntary Miranda Waiver

8   A statement made in response to custodial interrogation is admissible under Miranda v.

9   Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

10  that the statement was made after an advisement of Miranda rights, and was not elicited by improper

11  coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence

12  standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should

13  not be found in the "absence of police overreaching").

14  A valid Miranda waiver depends on the totality of the circumstances, including the

15  background, experience, and conduct of the  defendant. North Carolina v. Butler, 441 U.S. 369,

16  374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

17  awareness of both the nature of the right being abandoned and the consequences of the decision to

18  abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).  The Government bears the burden of

19  establishing the existence of  a valid Miranda waiver.  North Carolina v. Butler, 441 U.S. at 373.

20  In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of

21  the circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.  Factors

22  commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070,

23  1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have

24  trouble understanding questions, gave coherent answers, and did not ask officers to notify parents)),

25  (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291

26  F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the

27  criminal justice system from past encounters)), (3) the explicitness of the Miranda waiver (see

28  United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were

1   read to defendant twice and defendant signed a written waiver)), and (4) the time lapse between the

2   reading of the <u>Miranda</u> warnings and the interrogation or confession.  <u>See Guam v. Dela Pena</u>, 72

3   F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between <u>Miranda</u> warnings

4   and interview).

5          Here, the agents, scrupulously honored the letter and spirit of <u>Miranda</u> in carefully advising

6   Defendant of her <u>Miranda</u> rights prior to any post-arrest custodial interrogation.  Defendant was

7   advised of her <u>Miranda</u> rights before the interrogation.  Defendant orally agreed to waive her

8   <u>Miranda</u> rights.  Based on the totality of the circumstances, Defendant's statements should not be

9   suppressed because her <u>Miranda</u> waiver was knowing, intelligent, and voluntary.

10                 **2.    <u>Defendant's Statements Were Voluntary</u>**

11         The inquiry into the voluntariness of statements is the same as the inquiry into the

12  voluntariness of a waiver of <u>Miranda</u> rights. <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th

13  Cir.1990).    Courts look to the totality of the circumstances to determine whether the statements

14  were "the product of free and deliberate choice rather than coercion or improper inducement."

15  <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(<u>en banc</u>).

16         A confession is involuntary if "coerced either by physical intimidation or psychological

17  pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States</u>

18  <u>v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession

19  was voluntary, "the question is 'whether the defendant's will was overborne at the time he

20  confessed.'"  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003)

21  (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per

22  se rule. <u>United States v. Miller</u>, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must

23  "consider the totality of the circumstances involved and their effect upon the will of the defendant."

24  <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27 (1973)).

25         In determining the issue of voluntariness, this Court should consider the five factors under

26  18 U.S.C. § 3501(b).  <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five

27  factors include: (1) the time elapsing between arrest and arraignment of the defendant making the

28  confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the

1  nature of the offense with which he or she was charged or of which he was suspected at the time of

2  making the confession, (3) whether or not such defendant was advised or knew that he or she was

3  not required to make any statement and that any such statement could be used against him, (4)

4  whether or not such defendant had been advised prior to questioning of his right to the assistance

5  of counsel; and (5)  whether or not such defendant was without the assistance of counsel when

6  questioned and when giving such confession. 18 U.S.C. § 3501(b).  All five statutory factors under

7  18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made.  See Andaverde,

8  64 F.3d at 1313.

9       As discussed above, Defendant was informed of her Miranda rights, and she explicitly stated

10  that she understood her Miranda rights and agreed to waive those rights.  Defendant's statements

11  were not the product of physical intimidation or psychological pressure of any kind by any

12  government agent.  There is no evidence that Defendant's will was overborne at the time of her

13  statements.  Consequently, Defendant's motion to suppress her statements as involuntarily given

14  should be denied.

15       **3.    Defendant's Motion Should Be Denied Without An Evidentiary Hearing**

16       This Court can and should deny Defendant's motion to suppress statements without an

17  evidentiary hearing because Defendant failed to allege a specific factual dispute.  An evidentiary

18  hearing is required if a defendant's motion to suppress and supporting declarations or affidavits

19  allege a specific factual dispute.  See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986)

20  (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and

21  nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at

22  issue").  Where a defendant fails to provide a specific factual dispute of any material fact, the Court

23  is not required to hold an evidentiary hearing as stated above in paragraph II(A)(2).  See United

24  States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000); United States v. Batiste, 868 F.2d 1089,

25  1093 (9th Cir. 1989); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991);

26  United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d

27  857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession

28  where there was "no real allegation of [] police coercion").  In accordance with the Southern District

Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant provides a declaration that adduces specific facts sufficient to require the granting of the defendant's motion. Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Defendant  failed to specifically identify the statements that she seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements.   Defendant did not allege that the agents failed to advise Defendant of her <u>Miranda</u> rights, that the <u>Miranda</u> rights provided were somehow defective, that her <u>Miranda</u> waiver was not knowingly, intelligently, or voluntarily made, or that the statement was involuntarily coerced by Government agents. Defendant's Declaration did not address any issues related to her statement. In essence, Defendant's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule on the motion or allow the Government to prepare for any motion to suppress statements.  Moreover, Defendant's brief allegations fail to establish a <u>Miranda</u> violation, clearly making it unnecessary to hold an evidentiary hearing in this case.

For all the reasons above, the Court should deny Defendant's motion to suppress statements.

**C.    MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED**

**1.    The Grand Jury Instructions Were Not Faulty**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007.[1]   Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

---

[1] Appendix 1 is a "Partial Transcript" of the grand jury proceedings that took place on January 11, 2007, at 9:30 a.m., which records the instructions to the impaneled grand jurors *after* the voir dire had been conducted.  Appendix 2 is a redacted "Supplemental Transcript" of the grand jury proceedings that took place on January 11, 2007, at 10:45 a.m., which records relevant portions of the voir dire proceedings.

07CR3106-BEN

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. "). [Id.] Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]" – a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base her contentions on the Constitution as a reason to dismiss the Indictment. [Memorandum of Points and Authorities, p. 13, Docket Entry #24] (hereinafter "Memorandum") ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed.

974 F.2d at 1094 (citation omitted).[2]

The portions of the two relevant instructions approved in Navarro-Vargas were:

---

[2] In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

---

[3] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

1

**2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

2          Concerning whether the new grand jurors should concern themselves with the wisdom of the

3   criminal laws enacted by Congress, Judge Burns' full instruction stated:

4          You understood from the questions and answers that a couple of people were
           excused, I think three in this case, because they could not adhere to the principle that
5          I'm about to tell you.

6          But it's not for you to judge the wisdom of the criminal laws enacted by congress;
           that is, whether or not there should be a federal law or should not be a federal law
7          designating certain activity is criminal is not up to you. That's a judgment that
           congress makes.

8
           And if you disagree with the judgment made by congress, then your option is not to
9          say "Well I'm going to vote against indicting even though I think that the evidence
           is sufficient" or "I'm going to vote in favor of even though the evidence may be
10         insufficient." Instead, your obligation is to contact your congressman or advocate
           for a change in the laws, but not to bring your personal definition of what the law
11         ought to be and try to impose that through applying it in a grand jury setting.

12   Partial Transcript pp. 8-9.[4/]

13         Defendant acknowledges that in line with <u>Navarro-Vargas</u>," Judge Burns instructed the grand

14   jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by

15   Congress; that is, whether or not there should be a federal law or should not be a federal law

16   designating certain activity [as] criminal is not up to you.'" [Memorandum p. 2.] Defendant notes,

17   however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you

18   disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote

19   against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of

20   even though the evidence may be insufficient.'" [Memorandum pp. 2-3.] Defendant contends that

21   this addition to the approved instruction, "flatly bars the grand jury from declining to indict because

22   the grand jurors disagree with a proposed prosecution." [Memorandum p. 3.] Defendant further

23   contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to

24   an instance in the grand juror selection process in which he excused three potential jurors," which

25   resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his]

26

27         [4] The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three
           individuals. Indeed, it is a transcript of the entire voir dire portion of the grand jury selection
28   process, but has been redacted to exclude all names and other potential identifiers.

enforc[ing] that view on pain of being excused from service as a grand juror."[5/] [Memorandum p. 3.]

In concocting her theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. [Memorandum p. 10.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." [Memorandum p. 10.] This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect, Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6/] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

---

[5] See Appendix 2.

[6] That instruction is not at issue here. It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

This other instruction bestows discretion on the grand jury not to indict.[7] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could

---

[7] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated she was actually prejudiced thereby, a burden she has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
> .  .  .  . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.  They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

1    Partial Transcript p. 20.[8]

2        As a practical matter, you will work closely with government lawyers.  The U.S.
         Attorney and the Assistant U.S. Attorneys will provide you with important services
3        and help you find your way when you're confronted with complex legal matters.  It's
         entirely proper that you should receive the assistance from the government lawyers.

4

5        But at the end of the day, the decision about whether a case goes forward and an
         indictment should be returned is yours and yours alone.  If past experience is any
6        indication of what to expect in the future, then you can expect that the U.S. Attorneys
         that will appear in front of you will be candid, they'll be honest, that they'll act in
7        good faith in all matters presented to you.

8    Partial Transcript pp. 26-27.

9        Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts

10   against what they may be asking you to do if they're aware of that evidence," Defendant proposes

11   that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would

12   present to them evidence that tended to undercut probable cause." [Memorandum p. 12.] Defendant

13   then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect

14   that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . .

15   . they'll act in good faith in all matters presented to you.'" [Memorandum p. 10.]  From this lash-up

16   Defendant contends:

17       These instructions create a presumption that, in cases where the prosecutor
         does not present exculpatory evidence, no exculpatory evidence exists. A grand
18       juror's reasoning, in a case in which no exculpatory evidence was presented, would
         proceed along these lines:

19

20       (1)  I have to consider evidence that undercuts probable cause.

21       (2)  The candid, honest, duty-bound prosecutor would, in good faith,
         have presented any such evidence to me, if it existed.

22       (3)  Because no such evidence was presented to me, I may conclude
         that there is none. Even if some exculpatory evidence were presented,
23       a grand juror would necessarily presume that the evidence presented

24
_____

25   [8] Just prior to this instruction, Judge Burns had informed the grand jurors that:

26       [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-
         blown trial, you're likely in most cases not to hear the other side of the story, if there
27       is another side to the story.

28   Partial transcript p. 19.

                                    16                           07CR3106-BEN

1

2

represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

3

4

5

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

6

[Memorandum p. 13.] (Emphasis added.)[9]

7

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence

8

that cuts against what they may be asking you to do if they're aware of that evidence," is directly

9

contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

10

obligation to consider all 'substantial exculpatory' evidence, we do not understand how the

11

prosecutor can be said to have a binding obligation to present it."[10] (emphasis added)). See also,

12

United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the

13

government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

14

prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing

15

Williams) (emphasis added)).

16

17

18

19

20

[9] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

21

22

23

24

25

[10] Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress, he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

26

27

28

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[11] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[13] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[14]

---

[11] He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12] The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in <u>Navarro-Vargas</u> was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and

---

[15] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[16] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," <u>Williams</u>, 504 U.S. at 51 (citing <u>United States v. Calandra</u>, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other indictment, need not be dismissed.

---

[17]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1

**V**

2

**CONCLUSION**

3          For the foregoing reasons, the United States requests that the Court deny Defendant's Motion

4  to Suppress Evidence, Suppress Statements, and Dismiss the Indictment Due to Misinstruction of

5  the Grand Jury.

6          Dated: February 27, 2008.

7                                                    Respectfully submitted,

8                                                    KAREN P. HEWITT
                                                     United States Attorney
9
                                                     *s/Michelle M. Pettit*
10                                                   MICHELLE M. PETTIT
                                                     Assistant U.S. Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3106-BEN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| MARIA VASQUEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Michelle M. Pettit, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, SUPPRESS STATEMENTS, AND DISMISS THE INDICTMENT on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Leila W. Morgan**
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101-5008
(619)234-8467
Fax: (619)687-2666
Email: Leila_Morgan@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2008.

                    s/Michelle M. Pettit

                    MICHELLE M. PETTIT
                    Assistant U.S. Attorney

07CR3106-BEN