1 | KAREN P. HEWITT
United States Attorney
2 | MICHELLE M. PETTIT
Assistant U.S. Attorney
3 | California State Bar No. 253406
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California  92101-8893
5 | Telephone: (619) 557-7450
Fax: (619) 235-2757
6 | Email: michelle.pettit@usdoj.gov

7 | Attorneys for Plaintiff
United States of America
8 |

9 | UNITED STATES DISTRICT COURT

10 | SOUTHERN DISTRICT OF CALIFORNIA

11 | UNITED STATES OF AMERICA,        )   Criminal Case No. 07CR3106-BEN
                                     )
12 |              Plaintiff,          )   Date:    April 7, 2008
                                     )   Time:    2:00 p.m.
13 |          v.                      )
                                     )   **STATEMENT   OF   FACTS   AND**
14 | MARIA VASQUEZ,                   )   **MEMORANDUM    OF    POINTS    AND**
                                     )   **AUTHORITIES IN SUPPORT OF UNITED**
15 |              Defendant.          )   **STATES' MOTIONS IN LIMINE**
                                     )
16 | _____  )

17 |

18 |        COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

19 | KAREN P. HEWITT, United States Attorney, and Michelle M. Pettit, Assistant United States Attorney,

20 | and hereby files its Motions In Limine.  These Motions are based upon the files and records of the case

21 | together with the attached statement of facts and memorandum of points and authorities.

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

# I

## STATEMENT OF THE CASE

On November 14, 2007, a federal grand jury in the Southern District of California returned a two-count Indictment charging Defendant with the transportation of illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).  On November 15, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

### A.    Defendant's Arrest

On October 29, 2007, Border Patrol Agent Luis Rivera and FBI Special Agent Murry Streetman were conducting surveillance in the vicinity of the 4200 block of Logan Avenue in San Diego, California.  At approximately 10:50 a.m., they observed a gray Ford Expedition depart the area and travel to the Auto Zone parking lot located near Logan Avenue.  Based on their training and experience, Agents Rivera and Streetman knew this particular parking lot was notorious for presence of alien smuggling activities. While the agents continued surveillance of the Expedition, a gold Chevrolet Avalanche arrived in the parking lot and parked next to the Expedition.  The driver of the Avalanche got into the rear seat of the Expedition, and within minutes he walked back the Avalanche.  Then two Hispanic females, later identified as Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, and an unidentified Hispanic male exited the Avalanche and loaded into the rear seat of the Expedition.  The agents then observed the Expedition depart the area and return to the end of the cul-de-sac at the 4200 block of Logan Avenue.  The male passenger of the Expedition then guided Blanca Hernandez-Cansino and Rocio Hernandez-Cansino to a blue Astro Minivan bearing California license plate 3UGU958.

The Astro minivan then departed the area with Blanca Hernandez-Cansino and Rocio Hernandez-Cansino inside and headed northbound on Interstate 5.  Agent Rivera requested assistance from the Border Patrol agents at the San Clemente checkpoint in making a vehicle stop of the minivan. At approximately 12:15 p.m., Border Patrol Agents Arguilez and Avila observed the blue Astro minivan, license plate 3UGU958, pass their location, and they performed a vehicle stop.  Agents Arguilez and Avila approached the vehicle and questioned the occupants as to their immigration status.  The driver

1    identified herself as Maria Vasquez, a United States citizen.  The two Hispanic female passengers,

2    Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, admitted to being Mexican citizens and with

3    no immigration documents allowing them to enter or remain in the United States.

4                    **B.    Defendant's Post-Miranda Statement**

5            Defendant was advised of her <u>Miranda</u> rights, and she stated that she understood her rights and

6    wished to answer questions without an attorney present.  She stated that a man named Ramon offered

7    her money to transport his two daughters from the San Diego area to his home in the Los Angeles area.

8    Defendant believed that she was to be paid by Ramon for the transportation.

9            Defendant advised that she was to go to the Jack-in-the-Box restaurant near the intersection of

10   Interstate 805 and 43rd Street in San Diego, California on the morning of October 29, 2007.  Shortly after

11   10:30 a.m. on October 29, 2007, a gray Ford Expedition met her at the Jack-in-the-Box, and she was

12   instructed to follow the vehicle.  She stated that the Expedition led her to a cul-de-sac where two females

13   exited the Expedition and entered her vehicle.  Then defendant departed north on Interstate 5 and was

14   subsequently stopped by Border Patrol near the San Clemente checkpoint.  Defendant admitted that she

15   knew the females were illegally in the United States.

16                   **C.    Material Witness Statements**

17           Material Witnesses Blanca Hernandez-Cansino and Rocio Hernandez-Cansino were interviewed

18   and stated that arrangements to be smuggled into the United States were made on their behalf by their

19   father named Ramon.  They stated that in the early morning hours of October 29, 2007, in Tijuana,

20   Mexico, they were instructed by an unknown female to get into the trunk of a vehicle.  They stated that

21   a short time later they were removed from the trunk by an unknown male.  They were transferred

22   between several vehicles until they were finally transferred to a van driven by the defendant that headed

23   to Los Angeles. Both material witnesses were able to pick out the defendant from a photo-line up as the

24   driver of the van.

25                   **D.    Ramon Ochoa-Perez's Statement**

26           Mr. Ramon Ochoa-Perez was interviewed and stated that he is the stepfather of Blanca

27   Hernandez-Cansino and Rocio Hernandez-Cansino.  Mr. Ochoa-Perez stated that he made the

28   arrangements in Tijuana for his stepdaughters to be smuggled into the United States.  On October 29,

1  2007, Mr. Ochoa-Perez received a phone call from a woman named Maria, advising him that the his

2  stepdaughters had successfully crossed into the United States and she would be driving them to the Los

3  Angeles area for an additional charge.  Mr. Ochoa-Perez was able to pick out the defendant from a

4  photo-line up as the woman who contacted him and drove the vehicle transporting his stepdaughters

5  north to Los Angeles.

6        **E.     Defendant's Prior Arrest for Transportation of Illegal Aliens**

7        On August 16, 2007, defendant was arrested at the San Clemente Border Patrol Checkpoint for

8  the transportation of four illegal aliens.  On that occasion, defendant was a passenger in a Dodge Neon

9  driven by Margarita Herrera.  United States Border Patrol Agents Ayala and Theodoropoulos

10  determined that the three visible occupants in the rear seat were illegal aliens and discovered one

11  additional illegal alien hiding under a blanket.

12                                    **III**

13                      **POINTS AND AUTHORITIES**

14     **A.     The Court Should Admit "Other Act" Evidence Under Rule 404(b)**

15        In a letter that was sent to the defendant's defense counsel on March 31, 2008, the Government

16  provided notice to the defendant that the Government intends to introduce evidence of her arrest on

17  August 16, 2007, for transportation of four illegal aliens under Rule 404(b).  The notice was sufficient

18  to alert defense counsel to the general nature of the additional testimony and thereby avoid surprise.  The

19  Government will provide defense counsel with the names of the proposed witnesses and any additional

20  evidence that will be used to substantiate the evidentiary basis for the other acts as soon as possible.

21        Evidence of other crimes, wrongs, or acts is not admissible under Rule 404(b) to prove the

22  character of the defendant in order to show action in conformity therewith.  However, evidence of other

23  crimes, wrongs, or acts is admissible under Rule 404(b) so long as its introduction is for other purposes

24  such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

25  mistake or accident.  Rule 404(b) is "an inclusionary rule" under which evidence is inadmissible "only

26  when it proves nothing but the defendant's criminal propensities."  United States v. Diggs, 649 F.2d 731,

27  737 (9th Cir.), cert denied, 454 U.S. 970 (1981), overruled on other grounds,  United States v.

28  McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).

1    Evidence of other acts is admissible under Rule 404(b) if:

2        (1)    the evidence tends to prove a material element of the offense charged:

3        (2)    the prior act is not too remote in time;

4        (3)    the evidence is sufficient to support a finding that the defendant committed

5            the other act; and

6        (4)    (where knowledge and intent are at issue) the act is similar to the offense charged.

7    United States v. Plancarte-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (citing United States v. Mayans,

8    17 F.3d 1174, 1181 (9th Cir. 1994)); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993)

9    (evaluating admissibility under Rule 404(b) for materiality, similarity, sufficiency, and temporal

10    proximity).

11            **1.        Prior Arrest Is Material To The Elements Of The Offense**

12        Here, defendant's August 2007 arrest for transportation of illegal aliens satisfies these four

13    requirements.  First, defendant's prior involvement in the transportation of illegal aliens is material to

14    the issues of defendant's knowledge that the material witnesses were illegal and her intent to violate the

15    immigration laws.  Evidence of prior arrests and prior convictions for transporting illegal aliens has been

16    upheld as admissible to prove a defendant's knowledge and intent.  See United States v. Winn, 767 F.2d

17    527, 530 (9th Cir. 1985) (per curiam) (defendant's prior conviction for transportation of illegal aliens

18    was properly admitted "because it shows that appellant had knowledge of the smuggling operation in

19    which he was involved."); United States v. Longoria, 624 F.2d 66,69 (9th Cir. 1980) (Court did not err

20    in admitting into evidence defendant's conviction for transporting illegal aliens two years prior because

21    it was "highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of

22    innocent purpose"); United States v. Holley, 493 F.2d 581, 584 (9th Cir. 1974) (defendant's prior

23    apprehension for transporting illegal aliens was properly admitted to show knowledge, even though the

24    apprehension did not result in a prosecution).

25        The Ninth Circuit has also upheld the admission of other act evidence to prove absence or

26    mistake or refute an "innocent dupe" defense.  See United States v. Ramirez-Jiminez, 967 F.2d 1321,

27    1325-26 (9th Cir. 1992) (evidence that defendant had been previously observed at a residence used for

28    harboring illegal aliens admissible to show knowledge or reckless disregard in trial for transporting

1  illegal aliens); <u>Winn</u>, 767 F.2d at 530; <u>United States v. Bibo-Rodriguez</u>, 922 F.2d 1398, 1400 (9th Cir.

2  1991).

3              **2.       Prior Arrest Is Not Too Remote In Time**

4         Second, the "other act" evidence is not too remote in time. There is no bright-line rule requiring

5  the Court to exclude other act evidence after a certain period of time has elapsed. <u>See United States v.</u>

6  <u>Brown</u>, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989). Defendant's arrest for alien smuggling on August 16,

7  2007, is sufficiently recent for the purposes of Rule 404(b). <u>United States v. Johnson</u>, 132 F.3d 1279,

8  1283 (9th Cir. 1997) (upholding admission of other act that occurred 13 years before charged crime);

9  <u>United States v. Ross</u>, 886 F.2d 264, 267 (9th Cir. 1989) (same).

10             **3.       There Is Sufficient Evidence Of Prior Arrest**

11        Third, the Government will present sufficient evidence of defendant's recent arrest for

12  transportation of illegal aliens. Other act evidence under Rule 404(b) should be admitted if "there is

13  sufficient evidence to support a finding by the jury that the defendant committed the similar act."

14  <u>Huddleston v. United States</u>, 485 U.S. 681, 685 (1988). The testimony of a single witness satisfies the

15  low-threshold test of sufficient evidence for purposes of Rule 404(b). <u>See United States v. Dhingra</u>, 371

16  F.3d 557, 566-57 (9th Cir. 2004) (citing <u>United States v. Hinton</u>, 31 F.3d 817, 823 (9th Cir. 1994)).

17  Here, the Government will satisfy this low-threshold test of sufficient evidence through the testimony

18  of a Border Patrol Agent involved in Lamb's prior arrest.

19             **4.       Prior Arrest Is Similar To Charged Offense**

20        Fourth, defendant's recent arrest for transportation of illegal aliens is identical to the crimes

21  charged in this case. The arrest occurred in the same area of the San Clemente Border Patrol Checkpoint

22  while defendant was heading north to the Los Angeles area in both cases to deliver the illegal aliens.

23             **5.       Prior Arrest Is Not Unfairly Prejudicial**

24        Finally, defendant's prior arrest for transportation of illegal aliens is "not the sort of conduct

25  which would provoke a strong and unfairly prejudicial emotional response from the jury." <u>Ramirez-</u>

26  <u>Jiminez</u>, 967 F.2d at 1327.  Any prejudice could be minimized by a limiting instruction to the jury

27  instructing them to consider the other acts as it relates to defendant's knowledge, intent, absence of

28  mistake, and for no other purpose. <u>See United States v. Montgomery</u>, 150 F.3d 983, 1001 (9th Cir.

1   1998) (an appropriate limiting instruction is a factor weighing in favor of admission of Rule 404(b)

2   evidence).

3       **B.     The Court Should Exclude Witnesses During Trial with the Exception of the
                 United States' Case Agent**

4

5           Under Federal Rules of Evidence, Rule 615, "a person whose presence is shown by a party to

6   be essential to the presentation of the party's cause" should not be ordered excluded from the court

7   during trial. The case agent in this matter, Border Patrol Agent Luis Rivera, has been critical in moving

8   this case forward to this point and is considered by the United States to be an integral part of the trial

9   team. As such, the case agent's presence at trial is necessary to the United States. Further, the United

10  States requests that defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

11      **C.     The Court Should Prohibit Reference to Defendant's Health, Age, Finances,
                 Education, and Potential Punishment**

12          Evidence of, and thus argument referring to, defendant's health, age, finances, education and

13  potential punishment is not relevant for the purpose of determining a defendant's guilt or innocense at

14  trial. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Federal Rules of Evidence,

15  Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is

16  substantially outweighed by the danger of unfair prejudice." Further, the Ninth Circuit Model Jury

17  Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions,

18  prejudices, or sympathy." § 3.1 (2003 Edition, West Publishing Co.).

19          Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict.

20  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992). Any

21  mention of penalty or felony status is irrelevant as it sheds no light on defendant's guilt or innocence.

22  Therefore, the United States respectfully requests that this Court prohibit any reference to punishment

23  at any point in this trial.

24          Reference to defendant's health, age, finances, education, and potential punishment may be

25  relevant at sentencing. However, in an alien smuggling trial, such reference is not only irrelevant and

26  unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

27      **D.     Self-Serving Hearsay Is inAdmissible**

28          Defendant's out of court statements are inadmissible hearsay when offered by the defendant

through witnesses.  Defendant cannot rely on Federal Rules of Evidence, Rule 801(d)(2), because she is not the proponent of the evidence, and the evidence is not being offered against her.  Defendant cannot

attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  In this case, the United States anticipates that defendant may attempt to have the United States' witnesses testify about certain statements which defendant made to government agents or to defense witnesses.  Thus, the United States moves, in limine, to prohibit defendant from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense witnesses.

### E.    The Court Should Preclude Character Evidence

The United States anticipates that defendant may improperly attempt to introduce testimony regarding Defendant's specific acts of prior good conduct.  Testimony as to multiple instances of good conduct violates Federal Rules of Evidence, Rule 405(a).  United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987);  Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).  Further, Federal Rules of Evidence, Rule 404(a)(1), states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant.  United States v. Giese, 597 F.2d 1170 (9th Cir. 1979) cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation);  United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible.  However, asking a defense witness about a defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a).  See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (impermissible to ask character witness about defendant's propensity to

1   engage in large scale drug dealing).

2       Thus, the United States hereby moves to preclude Defendant from introducing testimony from

3   any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's

4   propensity to be involved in alien smuggling.

5           **F.    The Court Should Preclude Evidence of Duress and Necessity**

6       A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and

7   precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any

8   defense, objection, or request which is capable of determination without the trial of the general issue

9   may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982)

10  (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim.

11  P. 12(e).

12      Generally, motions are capable of pretrial determination if they raise issues of law, rather than

13  issues of fact. United States v. Shortt Accountancy Corporation, 785 F.2d 1448, 1452 (9th Cir. 1986).

14  Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient

15  duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing

16  duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997)

17  (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence,

18  as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered

19  defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

20      In order to rely on a defense of duress, a defendant must establish a prima facie case that:

21      (1)    defendant committed the crime charged because of an immediate threat of death or
               serious bodily harm;

22

23      (2)    defendant had a well-grounded fear that the threat would be carried out; and

        (3)    there was no reasonable opportunity to escape the threatened harm.
24

25  United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If defendant fails to

26  make a threshold showing as to each and every element of the defense, defense counsel should not

    burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.
27

28      A defendant must establish the existence of four elements to be entitled to a necessity defense:

        (1)    that he was faced with a choice of evils and chose the lesser evil;

                                    9                              07CR3106-BEN

(2)    that he acted to prevent imminent harm;

(3)    that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4)    that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves to preclude defense counsel from making any comments during opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense.  The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

### G.    Reciprocal Discovery

To date, defendant has produced no reciprocal discovery that defendant intends to introduce at trial.  The United States respectfully requests that defendant comply with Rules 12.2 and 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of defendant.  Accordingly, the United States intends to object at trial and ask this Court to exclude any evidence at trial which has not been provided to the United States.

### H.    Leave to File Further Motions

Should new information or legal issues arise, the Government respectfully requests the opportunity to file such further motions as may be appropriate.

//

//

//

//

//

1

IV

2

## CONCLUSION

3        For the above stated reasons, the United States respectfully requests that its Motions In Limine

4   be granted.

5

6        DATED: April 1, 2008                    Respectfully Submitted,

7                                                KAREN P. HEWITT
                                                 United States Attorney
8
                                                 */s/ Michelle M. Pettit*
9                                                MICHELLE M. PETTIT
                                                 Assistant U.S. Attorney
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28