

```
 1  KAREN P. HEWITT
    United States Attorney
 2  MICHELLE M. PETTIT
    Assistant U.S. Attorney
 3  California State Bar No. 253406
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California  92102-8893
 5  Telephone: (619) 557-7450

 6  Attorneys for Plaintiff
    United States of America
 7
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARIA VASQUEZ,<br><br>　　　　　Defendant. | Case No. 07CR3106-BEN<br><br>DATE:　April 29, 2008<br>TIME:　9:30 p.m.<br><br>STIPULATED FACTS AND<br>AGREEMENT REGARDING<br>COURT TRIAL |

IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Michelle M. Pettit, Assistant United States Attorney, and the defendant, Maria Vasquez, by and through her counsel, Leila W. Morgan, that the facts set forth in this stipulation are the evidence to be considered by the Court in deciding the trial of Defendant Maria Vasquez on Counts 1 and 2 of the Indictment charging her with the transportation of illegal aliens and aiding and abetting, in violation of Title 8, U.S.C., § 1324(a)(1)(A)(ii) and (v)(II).

//

//

//

MIP:4/18/08

1　　　　For the purposes of the court trial of Defendant on the two-
2　count Indictment, the parties HEREBY STIPULATE AND AGREE, that the
3　following would be the uncontroverted testimony of the United States'
4　witnesses:
5　　　　1.   United States Border Patrol Agent Luis Rivera would
6　testify that:
7　　　　　　a.   He has been employed as a Border Patrol Agent for
8　over 13 years, and he has been assigned to the Smuggling Interdiction
9　Group for the past three years.
10　　　　　　b.   On October 29, 2007, he was conducting surveillance
11　in the vicinity of Logan Avenue in San Diego, California.
12　　　　　　c.   At approximately 10:50 A.M., he observed two Hispanic
13　males get into a gray Expedition, depart the area, and enter the
14　AutoZone parking lot located at 1304 43rd Street, San Diego,
15　California.  The AutoZone was currently open for business.
16　　　　　　d.   He had knowledge that other agents in my Smuggling
17　Interdiction Group have made previous alien smuggling apprehensions
18　in that AutoZone parking lot.  Based on his training and experience,
19　he was aware that it was an area notorious for alien smuggling
20　activities.[1]
21　//
22　//

---

23　　　[1]　　Defendant objects to this statement under Federal Rules
24　of Evidence 401 and 403. Additionally, Defendant objects to the
25　statement as hearsay, and the United States asserts the testimony
26　is not being offered for its truth but to establish the agent's
27　presence in the location. The parties request the Court rule on
28　these objections as it would in the normal course of trial.

1       e.    At approximately 11:00 A.M., he observed a gold Chevrolet Avalanche arrive and park next to the Expedition, at which time a Hispanic male passenger exited the Expedition and spoke to the driver of the Avalanche.

     f.    The driver of the Avalanche then got into the rear seat of the Expedition, and within a few minutes the driver of the Avalanche returned to the Avalanche.

     g.    He then observed two Hispanic females, later identified as undocumented aliens Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, and one Hispanic male exit the Avalanche and load into the rear seat of the Expedition. Both Blanca and Rocio Hernandez-Cansino are natives and citizens of the Republic of Mexico without permission to enter or remain in the United States.

     h.    The Expedition then departed the AutoZone parking lot and returned to the cul-de-sac on Logan Avenue.

     i.    He then observed the two Hispanic females being guided out of the rear seat of the Expedition into a blue Astro Minivan, bearing California license plate 3UGU958, that was parked near the Expedition.

     j.    He followed the blue Astro Minivan as it departed the cul-de-sac and drove to a nearby Jack-in-the-Box restaurant where the driver, later identified as the Defendant, Maria Vasquez, spoke to a man in a black truck.

     k.    He continued to follow the Astro Minivan as it departed the area and headed northbound on Interstate 5 with the two Hispanic females inside.

//
//
//

     l.    Suspecting that the Astro Minivan contained undocumented aliens, he contacted the San Clemente Border Patrol Checkpoint and requested a vehicle stop since the checkpoint was not operational.

     m.    The Astro Minivan was stopped and Blanca Hernandez-Cansino and Rocio Hernandez-Cansino were discovered in the van. The van was being driven by the Defendant, Maria Vasquez.

     n.    He transported Blanca Hernandez-Cansino and Rocio Hernandez-Cansino from the San Clemente Border Patrol checkpoint to the Chula Vista Border Patrol Station where computer records checks revealed that they were both Mexican citizens, they had not been granted permission to enter into the United States, and there was no evidence that they were citizens or nationals of the United States.

     o.    On October 29, 2007, at 4:52 P.M., he read the Defendant, Maria Vasquez, her Miranda rights in the English language. The Defendant stated that she understood her rights and she wished to answer questions.

     p.    The Defendant stated she had been offered money to transport Blanca Hernandez-Cansino and Rocio Hernandez-Cansino from the San Diego area to the Los Angeles area, and she knew they were in the United States illegally.

     q.    Later, when he showed Blanca Hernandez-Cansino and Rocio Hernandez-Cansino a photographic line-up of six Hispanic females and requested that they pick the driver of the van that was heading north to Los Angeles, they both selected the photograph of the Defendant.

//
//

2. United States Border Patrol Agent Arnold Arguilez would testify that:

    a. On October 29, 2007, he was requested by Agent Luis Rivera to set up the San Clemente checkpoint to assist with the stop of a blue Astro Minivan, bearing California license plate 3UGU958.

    b. At approximately 12:15 P.M., he observed the blue Astro Minivan pass his location, and he got behind the vehicle to perform a vehicle stop.

    c. The Astro Minivan yielded to the Agents, and the Agents approached the vehicle to question the occupants about their immigration status.

    d. The driver identified herself as Maria Vasquez, a United States citizen.

    e. The two Hispanic passengers, Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, admitted to being citizens of Mexico without any immigration documents allowing them to enter or remain legally in the United States.

    f. He placed all individuals in the vehicle under arrest and transported them to the San Clemente Border Patrol checkpoint.

3. Material Witness Blanca Hernandez-Cansino would testify that:

    a. In October 2007, her mother lived in Los Angeles with a boyfriend named Ramon.

    b. Her mother contacted her and her sister, Rocio Hernandez-Cansino, one week before October 29, 2007, and advised them to come live in Los Angeles.

    c. On October 26, 2007, she and her sister flew to Tijuana, Mexico from Michoacan, Mexico, where Ramon picked them up and

took them to a hotel near a large clock on Avenida Revolucion in Tijuana, Mexico.

   d. The sisters and Ramon stayed at the hotel until Sunday afternoon, October 28, 2007, when an Hispanic male came to the hotel and took the sisters and another adolescent Hispanic male to a house in Tijuana.

   e. At the house, the sisters were advised that they would be smuggled later that evening. At approximately 3:00 A.M. on October 29, 2007, they were instructed to get into the trunk of a sedan, and they entered the trunk with the adolescent male.

   f. A short time later, the vehicle stopped and the trunk opened, and she noticed they were in the garage of a house.

   g. They were taken to a bedroom in the house on the second floor where they waited until approximately 9:00 to 10:00 A.M. at which time they got into a van to be transported to a parking lot.

   h. Once they arrived at the parking lot, they entered a Chevrolet Blazer-like vehicle along with the adolescent male.

   i. They were then transported to another location where they entered another vehicle that took them to a nearby residential area.

   j. The sisters were then instructed to get into the green van that was waiting for them, but the adolescent male was instructed to stay behind.

   k. There was a female driver in the green van, and she told the sisters that she was going to take them to see their father.

   l. They proceeded to a store where Ramon was waiting in a black truck, and the driver stated that the sisters would see him again in Los Angeles.

//

1          m.   The van then drove north, and when the van was
2   stopped by Border Patrol, the driver told the sisters to say they knew
3   each other for a year.
4          n.   She was asked to pick out the driver of the van from
5   a photographic line-up of six Hispanic females, and she selected the
6   photograph of the Defendant.
7       4.   Material Witness Rocio Hernandez-Cansino would testify
8   that:
9          a.   Her mother lives in Los Angeles with a boyfriend
10  named Ramon.
11         b.   Her mother contacted her and her sister, Blanca
12  Hernandez-Cansino, one week before October 29, 2007, and advised them
13  to come live in Los Angeles.
14         c.   On October 26, 2007, she and her sister flew to
15  Tijuana, Mexico from Michoacan, Mexico, where Ramon picked them up and
    took them to a hotel.
16
17         d.   The sisters and Ramon stayed at the hotel until
    Sunday afternoon, October 28, 2007, when an Hispanic male came to the
18
    hotel and made arrangements with Ramon to have the sisters smuggled
19
    into the United States by car or by boat.
20         e.   She was then taken with her sister to a vehicle a
21  short distance with the hotel, which took them to a house where they
22  were instructed to wait.
23         f.   At approximately 3:00 A.M. on October 29, 2007, they
24  were instructed to get into the trunk of a sedan, and they entered the
25  trunk with the adolescent male.
26         g.   They were told they would be in the trunk for only
27  about 15 to 20 minutes, but it took a little longer before the vehicle
28  stopped and the trunk opened in the garage of a house.

                                        7                        07CR3106-BEN

1        h.    They were taken to a bedroom in the house on the
2  second floor where they waited until approximately 10:00 to 11:00 A.M.
3  at which time they got into a van to be transported to a parking lot.
4        i.    Once they arrived at the parking lot, they entered a
5  Chevrolet Avalanche along with the adolescent male.
6        j.    They were then transported to another location where
7  they entered another vehicle that took them to a nearby residential
8  area.
9        k.    The sisters were then instructed to get into the
10 green van that was waiting for them, but the adolescent male was
11 instructed to stay behind.
12       l.    There was a female driver in the van, and she told
13 the sisters that she was going to take them to see their father.
14       m.    They first went to a store where Ramon was waiting in
15 a black truck and then they headed for Los Angeles.
16       n.    When the van was stopped by Border Patrol, the driver
17 told the sisters to say they met at a party and were friends.
18       o.    She was asked to pick out the driver of the van from
19 a photographic line-up of six Hispanic females, and she selected the
20 photograph of the Defendant.
21    5.    Ramon Ochoa-Perez would testify that:
22       a.    He is the stepfather of Blanca Hernandez-Cansino and
23 Rocio Hernandez-Cansino.
24       b.    In October 2007, he picked up Blanca Hernandez-
25 Cansino and Rocio Hernandez-Cansino from the airport in Tijuana,
26 Mexico and transported them to the Hotel Alaska on Calle Primera and
27 Avenida Revolucion in Tijuana.
28 //
   //

      c.    At the hotel, he arranged to have the sisters smuggled into the Unites States for $1000.00 each, and he would pay an additional transportation fee to have them transported to Los Angeles.

      d.    On October 28, 2007, he was instructed to take the sisters to a nearby location where he left them with the smugglers.

      e.    The next day he received a phone call from a woman named Maria, who stated that she had the two females and that they had successfully crossed into the United States.

      f.    Maria told him that she would be transporting the females to the Los Angeles area, and she would be charging an additional fee for the transportation north.

      g.    Maria instructed him to go to a Jack-in-the-Box on 43rd Street in San Diego, California, where he would be able to see the sisters.

      h.    He went to the designated area and saw the sisters with Maria, and then they proceeded north to Los Angeles where the sisters were to be turned over to him.

      i.    He was asked to pick out the driver of the vehicle, that carried Blanca Hernandez-Cansino and Rocio Hernandez-Cansino, from a photographic line-up of six Hispanic females, and he selected the photograph of the Defendant.

IT IS FURTHER STIPULATED AND AGREED THAT:

6.    Defendant through herself and through her Attorney, Leila W. Morgan, acknowledges that this stipulation will be used as evidence. Defendant expressly recognizes that she will most likely be found guilty of Counts 1 and 2 of the Indictment, and she expressly recognizes that she has the right to:

      a.    persist in a plea of not guilty;

  b. a trial by jury;

  c. the assistance of counsel at all stages of the proceedings against her and to have the court appoint and pay the same if she does not have sufficient funds;

  d. the right to confront and cross-examine all the witnesses against her;

  e. the right not to incriminate herself; and

  f. the right to use the subpoena powers of this court to compel the attendance of witnesses on her own behalf.

7. Defendant by herself and through her attorney:

  a. gives up her right to a jury trial;

  b. acknowledges the assistance of counsel in making decisions in this case;

  c. waives the calling of witnesses to establish the truthfulness of the facts contained herein and thus gives up the right to cross-examine and confront the same;

  d. gives up her right against self-incrimination; and

  e. waives the right to present evidence or witnesses on her own behalf.

8. Defendant also acknowledges that she has been advised that the <u>maximum</u> possible penalties for each offense (Counts 1 and 2) for which she is proceeding by way of court trial are as follows: five years custody (10 years total), a $250,000 fine ($500,000 total), supervised release of three years, and a special penalty assessment of $100.00 ($200.00 total).

9. By signing this Stipulation, Defendant certifies that it has been read to Defendant in Defendant's native language, and she has discussed the terms of this Stipulation with Defense Counsel and fully understands its meaning and effect.

SO STIPULATED AND AGREED.

DATED: 4-29-08.

MARIA VASQUEZ
Defendant

DATED: 4/29/08.

LEILA W. MORGAN
Attorney for Defendant

KAREN P. HEWITT
United States Attorney

DATED: 4/29/08.

MICHELLE M. PETTIT
Assistant U.S. Attorney